1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL VALVERDE,

    Plaintiff,

    v.

AT&T CORPORATION and DOES ONE
through TWENTY, inclusive,

    Defendants.

CIV-S-03-2580 DFL JFM

<u>MEMORANDUM OF OPINION</u>
<u>AND ORDER</u>

    Defendant AT&T ("AT&T") moves for summary judgment.  For the reasons stated below, the court GRANTS the motion.

I.

    On April 10, 2000, AT&T first placed Valverde on the payroll as a switch engineer.  (Thomas Decl. ¶ 4.)  During Valverde's employment, AT&T had a policy requiring regular attendance as an essential condition of employment.  (<u>Id.</u> ¶ 14.)  In addition, AT&T had a policy that employees who worked for more than six months would be paid for sick leave at the discretion of a manager.  (<u>Id.</u> ¶ 15.)  On August 18, 2000, Valverde received a written warning for missing eight days of work.  (<u>Id.</u> ¶ 18.)

1

Valverde was warned that if he missed additional days of work
before July 14, 2001, he might be subject to disciplinary action.
(Id. ¶ 19.)  On September 11, 2000, Valverde missed work.  On
September 12, 2000, Valverde was late for work.  (Id. ¶ 21.)
After missing work on October 16, 2000, Valverde submitted a
request for leave under the Family Medical Leave Act.  (Id. ¶¶
22, 23.)  AT&T denied his request for medical leave.  (Id. ¶ 24.)
Valverde did not return to work until November 9, 2000.  (Id. ¶
25.)  He missed work a number of additional times: (1) from
February 5, 2001 through April 1, 2001; (2) from May 29, 2001
through August 1, 2001; and (3) from August 13, 2001 through
November 19, 2001.  (Id. ¶¶ 26, 31, 33.)  On November 19, 2001
AT&T dismissed Valverde.  (Id. ¶ 49.)  In a fifteen month period,
from September 2000 through November 2001, it appears that
Valverde missed approximately 178 days of work.  AT&T issued
Valverde a final paycheck after he was terminated.  Because it
miscalculated the payroll tax withholding, AT&T sent Valverde a
second check to cover the difference.  (Id. ¶ 52.)

On November 5, 2003, Valverde filed a complaint in
Sacramento Superior Court against AT&T.  On December 16, 2003,
AT&T filed a notice of removal based on diversity jurisdiction.
Valverde brings five claims against AT&T: (1) wrongful
termination; (2) breach of implied contract; (3) a disability
claim under California's Fair Employment and Housing Act
("FEHA"), Cal. Gov't. Code § 12900 et seq.; (4) violation of the
California Family Rights Act ("CFRA"), Cal. Gov't. Code §

12945.2; and (5) violation of California's Labor Code.   AT&T
moves for summary judgment on all five claims.

II.

A. FEHA Discrimination Claim

AT&T argues that Valverde's claim for employment
discrimination fails because: (1) he is not a qualified
individual; and (2) AT&T terminated his employment for a
legitimate, non-discriminatory reason.   (Mot. at 7-11.)   In
assessing claims brought under FEHA, California courts have
looked to the framework established by federal courts applying
federal antidiscrimination laws.   See Guz v. Bechtel National,
Inc., 24 Cal.4th 317, 354 (2000).   California courts have adopted
the three-stage burden-shifting test for weighing claims of
disparate treatment as set forth by the United States Supreme
Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct.
1817 (1973).   Id.   That test requires a plaintiff to first
establish a prima facie case of discrimination, which will
generally require evidence sufficient to support a finding that
"(1) the plaintiff was a member of a protected class; (2) he was
qualified for the position he sought or was performing
competently in the position he held; (3) he suffered an adverse
employment action, such as termination, demotion, or denial of an
available job; and (4) some other circumstance suggests
discriminatory motive."   Id. at 355. The burden then shifts to
the employer to provide evidence that its action was taken for a
legitimate, nondiscriminatory reason.   Id. at 355-56.   If the

3

employer is successful in making that showing, the burden then shifts back to the plaintiff to show that the stated reason is a mere pretext, or to offer additional evidence of discriminatory motive.  Id. at 356.

AT&T argues that Valverde is not a qualified individual under FEHA because he failed to regularly attend work, an essential function of his job.  (Mot. at 7-10.)  Because the FEHA provisions relating to disability discrimination are based on the ADA and other federal law, decisions interpreting federal antidiscrimination laws are relevant in interpreting the FEHA's similar provisions.  Brundage v. Hahn, 57 Cal.App.4th 228, 235 (1997).  Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

Numerous courts have held that attendance at work is an essential job function.  See Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445 (8th Cir. 1998) (plaintiff did not establish that he could perform essential functions of his job without accommodation because he was unable to attend work on a regular basis); Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994) (coming to work regularly was an "essential function"); Tyndall v. Nat'l Educ. Centers, Inc., 31 F.3d 209, 213 (4th Cir. 1994) ("[A] regular and reliable level of attendance is a necessary element of most jobs.").

Valverde concedes that regular attendance is an essential function of employment.  (Opp'n at 4.)  In addition, he admits that his physician has not stated that he can return to work. (Pl.'s Response to DSUF 59.)  However, in an affidavit, Valverde asserts that his physician released him to work four hours per day.  (Valverde Decl. ¶ 5.)  Despite this contradictory statement, Valverde does not argue, or offer evidence, that working four hours per day would be considered regular attendance or a reasonable accommodation.  Instead, Valverde seems to argue that the court should "expand" the law to provide assistance to people with mental disabilities.  (Reply at 4.)  He cites no cases to support his position.  Because Valverde fails to introduce evidence that he could regularly attend work, or that AT&T refused to provide him a reasonable accommodation, the court GRANTS AT&T's motion for summary judgment on Valverde's discrimination claim.

B. Wrongful Termination

Valverde's wrongful termination claim is based on the same theory and evidence as his discrimination claim.  Therefore, for the same reasons discussed above, AT&T's motion for summary judgment is GRANTED as to the wrongful termination claim.

C. Breach of Implied Contract

Plaintiff concedes his breach of implied contract claim. (Opp'n at 3.)

D. Wage and Hour Violations

AT&T argues that Valverde's claims for wage and hour

violations fail as a matter of law.  (Mot. at 18.)  Valverde raises six wage and hour violations in his complaint: (1) on November 20, 2001, he only received a partial payment of his wages that were due and it took another thirty days before he received the additional $1,200; (2) he was entitled to two additional days of vacation pay; (3) he was entitled to $8327.00 in sick pay; (4) he was entitled to a $200.00 award dinner; (5) he was entitled to a twenty year ring; and (6) he was entitled to an annual cash bonus.

Under California Labor Code section 201, "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  An employer must pay penalties for willfully failing to pay these wages.  Cal. Labor Code § 203.  The penalties accrue from the date the wages become due until they are paid or until an action is commenced. Id.  Under this section, "willful" means "the employer intentionally failed or refused to perform an act which was required to be done."  Barnhill v. Robert Saunders & Co., 125 Cal.App.3d 1, 7-8 (1981) (emphasis omitted) (citing Davis v. Morris, 37 Cal.App.2d 269 (1940)).  An employer's good faith belief that wages are not owed may negate a finding of willfulness.  Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc., 102 Cal.App.4th 765, 782 (2002); see also Cal. Code of Regs. tit. 8, § 13520 (providing that an employer's good faith dispute, based in law or fact, that any wages are due will preclude imposition of waiting time penalties under § 203).

AT&T argues that it did not act willfully, even though Valverde did not immediately receive all of the wages that he was owed. (Reply at 6.) In support of this argument, AT&T provides an affidavit from Stephen Jones ("Jones"), a manager at AT&T, stating that on November 19, 2001, AT&T issued a check for the incorrect amount to Valverde because it withheld too much for taxes.[1] (Jones Decl. ¶ 3.) Jones avers that AT&T mailed a second check after it discovered the error.[2] (Id.) Valverde fails to introduce evidence showing that AT&T did not act in good faith by withholding part of his check. Therefore, the court GRANTS AT&T's motion for summary judgment on Valverde's claim for waiting time penalties.

AT&T notes that, in his response to AT&T's statement of undisputed material fact, Valverde failed to dispute that: (1) AT&T provided a twenty year party and ring; (2) supervisors at AT&T award sick time at their own discretion based on an employee's attendance record; and (3) an employee terminated during the year is not entitled to a year-end bonus. (Reply at 7; Pl.'s Response to DSUF ¶¶ 62, 15, 36.) Valverde provides no evidence to support a finding that he could succeed on these claims at trial. Therefore, the court GRANTS AT&T's motion for summary judgment on Valverde's claims for sick pay, an award dinner, a twenty year ring, and an annual cash bonus.

---

[1] Valverde claims that he received this check in the mail on November 11, 2001. (Valverde Decl. ¶ 4.)

[2] Valverde avers that he received the second check in the mail on November 30, 2001. (Valverde Decl. ¶ 4.)

Finally, AT&T argues that it does not owe Valverde two days of vacation pay because he used them to cover the two days of work he missed on November 7, 2000 and November 8, 2000. (Def.'s Supp. Brief at 2.)  In his deposition, Valverde states that he seeks payment for two vacations he took after returning to work from disability leave in October 2000. (Pl.'s Depo. at v.2 95.) However, Valverde also states that he used those vacation days to cover his absences from work. (<u>Id.</u> at v.1 143.)  Because Valverde acknowledged that he used his vacation time to cover the two days he was absent from work, AT&T does not owe him vacation pay.  Therefore, the court GRANTS AT&T's motion for summary judgment on Valverde's claim for two days of vacation pay.

<u>E. CFRA Violations</u>

Plaintiff concedes his CFRA claim. (Opp'n at 5-6.)

III.

For the reasons stated above, the court GRANTS AT&T's motion for summary judgment.  The clerk shall enter judgment.

IT IS SO ORDERED.

Dated: 5/12/2006

_____
DAVID F. LEVI
United States District Judge